UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA R. FREEMAN AND GARY B. FREEMAN | : |
| | : |
| | : Civil Action No. 10-1541 (ES) |
| Plaintiffs, | : |
| v. | : |
| | : |
| ROBERT EMMET McDOWELL, et al. | : |
| | : OPINION |
| Defendants. | : |
| | : |

**SALAS, DISTRICT JUDGE**

This action comes before the Court upon motion of Plaintiffs Barbara R. Freeman and Gary B. Freeman (collectively, "Plaintiffs") for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) against Defendants Robert Emmet McDowell ("McDowell") and Drumbrone Capital Group ("Drumbrone"). For the reasons that follow, the Court GRANTS Plaintiffs' motion and awards damages to Plaintiffs in the amount of $301,853.65.

Briefly, this case arises from the actions of McDowell, a financial advisor who was convicted of embezzling from his former clients, Plaintiffs. Plaintiffs sued McDowell, Drumbrone (McDowell's financial advisory firm), and numerous financial institutions that serviced the accounts that McDowell stole from. All the financial institutions settled, so only McDowell and Drumbrone remain in the case. Plaintiffs move here for default judgment against the remaining Defendants because McDowell failed to properly respond to filing deadlines or discovery requests. The Court held an evidentiary hearing to properly set damages.

1

## I.  FACTUAL BACKGROUND

### A. Procedural History

Plaintiffs commenced this civil action on January 26, 2010.  (*See* D.E. No. 1, Ex. A, Compl.).  Defendant ING USA Annuity and Life Insurance Company ("ING") filed a Notice of Removal in this case on March 24, 2010.  (D.E. No. 1, Notice of Removal).  Drumbrone filed an Answer on April 30, 2010.  (D.E. No. 14).  McDowell also filed an Answer on April 30, 2010.  (D.E. No. 15).

Plaintiffs requested answers to interrogatories and responses to a notice to produce documents on November 15, 2010.  (D.E. No. 46-1, Cert. of John D. McCarthy in Supp. of Pl.'s Mot. to Strike Def.s' Answer for Failure to Make Discovery ("McCarthy Cert.") ¶ 5).  Both McDowell and Drumbrone failed to comply with Plaintiffs' requests within the required thirty-day period.  (*Id.* ¶ 4).  On June 9, 2011, the Court held a conference call where McDowell advised the Court that he would not retain counsel for Drumbrone.  (*Id.* ¶ 6).  During the June 9, 2011 conference, the Court granted permission to Plaintiffs to file a motion to strike Drumbrone's answer.  (*Id.* ¶ 7).  During the June 9, 2011 status conference, the Court also ordered McDowell to answer the outstanding document requests and interrogatories by July 11, 2011; however, McDowell again failed to produce the responses.  (*Id.* ¶ 8).  McDowell later appeared via videoconference system at the August 10, 2011 status conference.  (D.E. No. 49).

Plaintiffs filed a motion to strike Defendants' answers and enter default on July 28, 2011.  (D.E. No. 46).  On January 24, 2012, Magistrate Judge Waldor issued a Report and Recommendation recommending that Plaintiffs' motion to strike be granted.  (D.E. No. 53).  The Court granted Plaintiffs' motion to strike and enter default on August 7, 2012.  (D.E. No. 67, Order).

On September 6, 2012, Plaintiffs filed the instant motion seeking default judgment. (D.E. No. 68). McDowell responded by letter, contesting the amount of damages sought by Plaintiffs. (D.E. No. 69). The Court ordered an evidentiary hearing, which was held on May 6, 2013. (D.E. No. 77).

### B. Factual History

Based on testimony and evidence presented at the May 6, 2013 evidentiary hearing, the Court finds the following. McDowell is currently incarcerated and proceeding *pro se*. (May 6, 2013 Hearing ("Hearing") Tr. 33:4-7). McDowell was Plaintiffs' financial advisor, (*id.* 9:15-16), and he stole Plaintiffs' money from accounts entrusted to his care, (*id.* 12:8-14). There are three accounts relevant to the instant motion: (a) the "Southwest Account"; (b) the "ING Account"; and (c) the "Allianz Account." McDowell sold Plaintiffs a $450,000 financial product (the Southwest Account), (*id.* 9:18-23), and then later "professionally advised" Plaintiffs to close the account without advising Plaintiffs that there would be a $38,021.71 surrender penalty, (*id.* 10:14-19). At the evidentiary hearing, McDowell did not contest his liability for the Southwest Account surrender penalty. (*Id.* 32:22-24).

After failing to advise Plaintiffs about the Southwest Account surrender penalty, McDowell advised Plaintiffs to use the Southwest Account proceeds to open two other accounts: the ING Account (opening balance: $332,000) and the Allianz Account (opening balance: $100,000). (*Id.* 10:20-25). The ING Account was an annuity that paid 7% annual interest on the principal amount. (*Id.* 19:15-21). McDowell stole money from the ING Account—the total amount of improper withdrawals and associated surrender charges totaled $228,435.97. (*Id.* 16:12-17). In addition, McDowell's improper withdrawals triggered a contractual provision that converted the account to a "market-driven" account, meaning that the value of the account

3

fluctuated over time, based on the market performance of the underlying assets. (*Id.* 19:23-20:5). The ING Account became worthless because of a combination of McDowell's improper withdrawals and surrender fees, as well as market losses. (*Id.* 20:11-21). On April 6, 2011, ING paid Plaintiffs a $228,435.97 settlement (the "ING Settlement"). (D.E. No. 80, Supp. Cert. of Mrs. Freeman ("Freeman Supp.") ¶ 27). Plaintiffs seek the 7% annual interest that they expected from the ING Account, as well as the $103,564.03 difference between the opening value of the ING Account and the settlement that ING paid. (Hearing Tr. 27:17-28:11).

McDowell also stole $5,000 from the Allianz Account, which Plaintiffs seek to recover in this suit. (*Id.* 23:7-19). At the evidentiary hearing, McDowell did not contest his liability for the $5,000 embezzled from the Allianz Account. (*Id.* 32:22-24). Finally, Plaintiffs seek attorneys' fees and costs totaling $83,641.84. (Freeman Supp. ¶ 37).

At the evidentiary hearing, the Court heard argument on the following three issues: (1) whether the ING Account had a "guaranteed" 7% interest rate; (2) which theory of damages to apply to the time periods after the ING Settlement was paid; and (3) whether the Plaintiffs' attorneys' fees invoices are privileged work product[1]. McDowell admitted that he stole the funds that Plaintiffs claim he stole. (Hearing Tr. 32:22-24). Plaintiffs provided seven exhibits at the hearing.[2] McDowell did not provide any supplemental submissions to the Court since the evidentiary hearing even though he represented at the hearing that he would. (*Id.* 49:11-18).

---

[1] At the evidentiary hearing, Plaintiffs waived their argument that the work-product privilege protected disclosure of attorneys' fees invoices to McDowell. (Hearing Tr. 6:23-25).

[2] Plaintiffs submitted seven exhibits at the hearing: the ING Account initial statement, showing the first deposit (P-1), (Hearing Tr. 12:1-4); a statement from the Southwest Account (P-2), (*id.* 8:10-11); an ING Account forgery affidavit (P-3), (*id.* 8:14-15); requests for financial service documents from the ING Account (P-4), (*id.* 8:17-19); attorneys' fees invoices (P-5), (*id.* 8: 21-22); a document produced by Mrs. Freeman showing her calculation of total damages (P-6), (*id.* 9:10-11); Allianz Account statement (P-7), (*id.* 21:23-22:6).

## II.     LEGAL STANDARD

The United States Supreme Court has held that "it is . . . an exercise of judicial power for a court upon default, by taking evidence when necessary . . . to fix the amount which plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944).  The Third Circuit has elaborated on *Pope*, stating "it is well-settled in this Circuit that the entry of default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

## III.    DISCUSSION

### A. Unrepresented Corporation

Drumbrone may not proceed without counsel, so the Court will only consider arguments that McDowell can make as an individual.  *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel").

### B. Default Judgment

Before granting a default judgment, the Court must make factual findings "as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc, v. New Jersey Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

The Court makes the following findings, in accordance with the standard of *Doug Brady*: McDowell lacks a meritorious defense because, during the evidentiary hearing, McDowell admitted that he committed the acts that Plaintiffs accuse him of committing. (Hearing Tr. 32:22-24). In addition, McDowell's defense to non-compliance with Court orders (that he was incarcerated and had trouble getting mail and documents) is not meritorious, because the Court

has considered this issue already and found that McDowell knowingly failed to answer to the best of his ability as an incarcerated person. (D.E. No. 67, Order). Second, the Court finds that Plaintiffs will suffer prejudice if the Court does not enter default judgment as Plaintiffs have "no other means of seeking damages for the harm allegedly caused." *Gowan v. Cont'l Airlines, Inc.*, 10-1858 JLL, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012). Finally, McDowell's culpability is established by the bad faith he displayed in refusing to satisfactorily answer multiple Court Orders.[3] The Court weighs these factors and finds that rendering judgment by default is appropriate.

**C. Damages**

Generally, in default judgments, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Here, Plaintiffs argue that because of McDowell's conversion and negligence, the Court should award the following amounts for damages: (a) $38,021.71 for the Surrender Penalty from the Southwest Account; (b) $103,564.03 for the difference between the opening value of the ING Account and the ING Settlement; (c) $23,240.00 for 2009 annual interest that would have accrued in the ING Account if McDowell had not made unauthorized withdrawals; (d) $24,866.80 for 2010 annual interest that would have accrued in the ING Account; (e) $26,607.48 for 2011 annual interest that would have accrued in the ING Account; (f) $28,470.00 for 2012 annual interest that would have accrued in the ING Account; (g) $30,462.90 for 2013 annual

---

[3] "Appropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated . . . [r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984)

interest that would have accrued in the ING Account; (h) $5,000 for improper withdrawal from the Allianz Account; (i) $80,085.08 for attorneys' fees; and (j) $3,556.76 for costs of suit. (D.E. No. 68). These alleged damages total $363,874.76.

McDowell argues two things: (1) the 7% annual interest on the ING Account was not a "guaranteed" return, but rather was subject to conditions that might have produced a lower return (Hearing Tr. 25:22-26:10; 33:19-34:10); (2) Plaintiffs should not recover 7% interest on the ING Settlement funds ($228,435.97) after they received those funds, so Plaintiffs' claimed interest should be reduced, (*Id.* 32:4-19). The Court will address each argument in turn.

### i) The "Guaranteed" 7% Annual Interest of the ING Account

McDowell argues that the 7% annual interest rate of the ING Account was not "guaranteed." (*Id.* 25:22-26:10; 33:19-34:10). In support, McDowell posits that the rate would change from "fixed" to "market-driven" if any withdrawals were ever made from the account. (*Id.*). McDowell further argues that Plaintiffs might have withdrawn funds from the account someday, and that it is impossible for Plaintiffs to prove that they would have never withdrawn funds from the account. (*Id.*).

The Court declines to enter the realm of the "conjectural or speculative," *see English Whipple Sailyard, Ltd. v. Yawl Ardent*, 459 F. Supp 866, 877 (W.D. Pa. 1978), because McDowell did, in fact, make the first improper withdrawal, which converted the "fixed" account to a "market-driven" account. (Hearing Tr. 19:10-14). Thus, the Court holds that the ING Account did provide a 7% annual interest rate.

### ii) Post-Settlement Interest on the $228,435.97 that Plaintiffs Already Recovered

Plaintiffs argue that (1) they expected the 7% interest per year[4] so they are entitled to the full 7% for their entire $332,000 investment for all time periods until the Annuity Term expires, (Hearing Tr. 39:13-25; 41:20-42:8); (2) in the alternative, Plaintiffs seek the difference between their expected return (7%) and the return they earned on their mitigation-of-damages investment.[5] (*Id.* 31:9-17; 42:9-19). Plaintiffs allocated the ING Settlement Proceeds ("Settlement Proceeds") to a savings account for ten months before investing the majority of the funds in municipal bonds. (Freeman Supp. ¶¶ 28-30). Construing liberally pursuant to *Dluhos*,[6] McDowell argues that (1) he should not be liable for 7% interest on the Settlement Proceeds for time periods after April 6, 2011 (the date that Plaintiffs received the ING Settlement), because Plaintiffs have use of and access to those funds. (Hearing Tr. 25:7-9; 44:14-19). In the alternative, (2) the Court should look at the nature of Plaintiffs' investments for time periods after they received the Settlement Proceeds because the equities markets have been appreciating tremendously over the last few years, but Plaintiffs have not earned a commensurate return. (*Id.* 29:16-30:1; 32:4-9).

The Third Circuit held that "in the mitigation context, an alternative investment should have investment characteristics as close as possible to the original investment in terms of

---

[4] Plaintiffs argue that the specific reason for investing in the ING Account was the fixed 7% interest. (Hearing Tr. 41:20-24).

[5] As of June 28, 2013, Plaintiffs have had a negative return on their investment of the Settlement Proceeds. Thus, under either theory, Plaintiffs' position is that a judgment in this matter should provide them a 7% annual return on the Settlement Proceeds.

[6] McDowell proceeds *pro se*, so the Court "must liberally construe his pleadings, and [. . .] apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

principal, interest rate, borrower credit rating, and intended duration." *Prusky v. Reliastar Life Ins. Co.*, 532 F.3d 252, 259 (3d Cir. 2008) (internal quotations omitted).

The Court holds that the proper measure of damages is the approach that McDowell advocates. In the papers filed in the instant motion and during the evidentiary hearing, Plaintiffs cited no law that supports their position that expectancy should be the measure of damages after $228,435.97 in principal was returned to them. The Court may have been sympathetic to an argument that Plaintiffs are entitled to the difference between their expected 7% annual returns and the returns that they actually earned on the Settlement Proceeds, but there was no factual pleading in the motion papers or at the hearing about the relative investment characteristics of the ING Annuity and the replacement investments. In addition, there was no testimony regarding any reasonable efforts put forth by Plaintiffs to secure the best rate of return possible for the risk of the replacement investments. Plaintiffs showed the Court what their alternative investments earned, but Plaintiffs did not show why that was a reasonable return. Thus, the Court holds that McDowell is not liable for 7% interest until the end of the annuity term on the Settlement Proceeds. Thus, Plaintiffs do not recover damages for interest that would have accrued on the $228,435.97 of the ING Settlement after the date that the ING Settlement was paid to Plaintiffs.

    iii)     **ING Account 7% Interest on Previously-Earned Interest**

In Plaintiffs' submissions to the Court, Plaintiffs assume that interest earned on the principal of the ING Account should be added to the principal and then earn 7% annual interest. (*See e.g.* Plaintiffs' Exhibit at the May 6, 2013 Evidentiary Hearing, P-6, Plaintiffs' Calculation of ING Account Damages). However, Plaintiffs' written submissions and oral testimony at the evidentiary hearing do not support this theory of damages. Notably, Plaintiffs did not submit the

prospectus of the ING Account at the evidentiary hearing, so the Court has no basis to conclude that the ING Account would have retained all interest and paid 7% interest on those amounts. Thus, the Court, applying its discretion under *Hritz,*[7] holds that the proper measure of damages for the ING Account does not include interest on previously-earned interest.

### iv) ING Account Damages Calculation

The Court calculates damages due on the ING Account in the following manner: 7% simple interest is earned on unpaid principal, compounded once per year. Any interest earned is due to Plaintiffs, but does not earn additional interest. For 2011, the Court notes that the ING Settlement was paid to Plaintiffs on April 6, 2011, so the unpaid principal amount for 2011 was $332,000 before that date and $103,564.03 after. As noted *supra.*, McDowell is not liable for interest on the $228,435.97 settlement *after* Plaintiffs received those funds, but he is liable for interest on that amount for time periods *before* Plaintiffs received those funds. The $103,564.03 of principal that was not returned to Plaintiffs continues to accumulate 7% interest until the annuity term ends or Plaintiffs are paid. Thus, Plaintiffs are awarded $175,790.10 for principal and interest related to the ING Account conversion. *See attached Appendix for Calculation*.

### v) The Southwest Account Surrender Penalty, Allianz Account Conversion, and Attorneys' Fees and Costs

McDowell did not contest Plaintiffs' claims related to the Southwest Account and the Allianz Account. (Hearing Tr. 32:22-24). Thus, the Court holds that Plaintiffs are entitled to $38,021.71 for the Southwest Account Surrender Penalty and $5,000 for the Allianz Account conversion.

---

[7] "It is well-settled in this Circuit that the entry of default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *see also Pope v. United States*, 323 U.S. 1, 12 (1944) ("it is . . . an exercise of judicial power for a court upon default, by taking evidence when necessary . . . to fix the amount which plaintiff is lawfully entitled to recover and to give judgment accordingly.").

McDowell also did not contest Plaintiffs' attorneys' fees and costs claims, even though the Court ordered Plaintiffs to provide the attorneys' fees records to him. Thus, the Court holds that Plaintiffs are entitled to $80,085.08 in attorneys' fees and $3,557.76 in costs of suit.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment. Judgment is entered against Defendants Robert E. McDowell and Drumbrone Capital Group in favor of Plaintiffs in the amount of $301,853.65.

This amount consists of:

(a) $38,021.71         Southwest Account Surrender Penalty
(b) $175,190.10        ING Account Conversion - Principal and Interest
(c) $5,000.00          Allianz Account Conversion
(d) $80,085.08         Attorneys' Fees
(e) $3,556.76          Costs

An appropriate Order follows this Opinion.

*s/Esther Salas*_____
**Esther Salas, U.S.D.J.**

## APPENDIX – CALCULATION OF ING ACCOUNT LIABILITY

| Year: | Principal: | Annual Interest: | TOTAL DUE: |
|---|---|---|---|
| 2009 | 332,000.00 | 23,240.00 | |
| 2010 | 332,000.00 | 23,240.00 | |
| 2011 | 160,673.02 * | 11,247.11 | |
| 2012 | 103,564.03 | 7,249.48 | |
| 2013 | 103,564.03 | 7,249.48 | |
| Current Total: | 103,564.03 | 72,226.07 | **$175,790.10** |

*Weighted average, reflecting April 6, 2011 settlement [Principal was reduced from $332,000.00 to $103,564.03]. (D.E. No. 80 ¶ 27).